WILLIAM FARRAR *v.* STATE OF ARKANSAS

5218                                407 S. W. 2d 112

Opinion delivered October 24, 1966

*A. M. Coates,* for appellant.

*Bruce Bennett*, Attorney General, *H. Clay Robinson*, Asst. Atty. Gen., for appellee.

GUY AMSLER, Justice. Appellant, William Farrar (referred to in the record as Jack Farrar), on August 14, 1965, was charged by information in the Circuit Court of Lee County, Arkansas, with the crime of robbery.

By separate informations Priest Bob Gates, Joe Cheers and Roland Cheers were charged with participating in the offense. Lafayette O'Donnell was the alleged victim.

Within a few hours after the offense was committed on the evening of July 10, 1965, Joe Cheers and Roland Cheers left the State of Arkansas and were apprehended in Kansas City, Missouri, and returned to Lee County, Arkansas, sometime in the early part of 1966.

On the 18th of February, 1966, all the defendants entered pleas of not guilty, and the court appointed counsel to represent the defendunts, Priest Bob Gates, Joe and Roland Cheers, and thereafter Joe and Roland Cheers changed their pleas to guilty and their sentences were deferred until after the trial of appellant and Priest Bob Gates.

On the 7th day of March, 1966, the charges against appellant and Priest Bob Gates were consolidated and tried. Gates was found not guilty and appellant was convicted of grand larceny. The court entered its judgment sentencing Farrar to one year in prison.

Appellant filed his motion for a new trial, which was overruled, and the case is here on appeal. Five errors are alleged, but our conclusion necessitates a discussion of only one. The inquiry of importance is whether there was any corroborative evidence to support the testimony of an accomplice.

There was considerable testimony regarding the early evening activities of the parties but we deem this of little significance since sometime around midnight of July 10, 1965, the four defendants and the victim were first together at Farrar's cafe. O'Donnell purchased a couple of drinks and a sandwich, which he used a $5 bill to pay for. O'Donnell decided to leave the cafe so appellant offered to haul him but he declined, and then left, walking, with the Cheers boys. He was going by Emma Lee Jefferson's (the Cheers' boys Aunt) to leave his money for safe keeping before going some place else.

There is a conflict regarding subsequent events. O'Donnell and the Cheers boys say that Farrar, with Gates in the car, picked them up and hauled them to Emma Lee's house. Then O'Donnell, according to appellant's brief, says:

"I got out of the car, and the two Cheers boys got out with me, one on one side and one on the other, and Joe Cheers was the one that took my money. I said, 'Bring my money back,' and he started hollering, 'Wait for me.' I then went down and woke up Moore who was in the same house with Emma Lee and I got his car and he, Emma Lee and Moore got in his car and tried to find this other car, which we did in front of the Supermarket on Highway 79. I got out of the car and went up to the car. Joe Lewis was in and said, 'Give me my money back.'' Farrar did not say anything. Later on he said he did not know anything about any money.''

On the other hand Farrar says that he and Gates, after leaving the cafe, decided to drive to ''Millie's Place'' out on Highway 44. Then appellant's brief recites:

"We got out to Highway 1 and made a right turn off of Moton Street. We were going down Moton Street and got to Highway 1 and stopped, then made a right turn and went about a house and a

half, I was at the Chinaman's store. I was driving along real slow with the windows down, it was warm, and Joe Cheers came by and hollered and said, 'Where are you going?' and I said, 'I am going out to Millie's, and he said, 'There is Roland,' and he got in the car. Joe told me to stop for Roland, and he told me they wanted me to take them to the Blue Goose on Highway 79 West of Marianna about two miles. Gates was in the car with me at the time and an old drunk fellow. After Roland Cheers got in the car, he said he wanted to go to the Blue Goose, and I made a left turn on Florida Street, which runs North and South. We were going down Louisiana Street, one block from No. 1 Highway which goes one block to Arkansas Street which took us back to the Chinaman's store and took us back within one house of Emma Lee's house. We then went down Arkansas to No. 1 Highway, which runs back to Moton Street. Arkansas Street terminates and so does Moton. I was on my way out to the Blue Goose. I was going out Marine Street to Mann Fong, the Chinaman's and that is where R. B. Moore pulled up behind me and blowed his horn and Emma Lee Jefferson came up to the car. Emma Lee came over to my car and said, 'Joe, give Son his money' and he said, 'I haven't got his money,' and Son said, 'We are going to the police.' I said, 'I will go with you.' I got in my car and trailed him, and he went back home. I thought he was going to the police. At that time, the Cheers boys, the old drunk and myself and Gates were in my car."

Joe Cheers testified that Bob Gates snatched O'Donnell's purse as they approached Emma Lee's porch, after riding up in appellant's car. He also said that Gates gave the money to appellant and that Farrar divided the money four ways. He claims that he got $27 and his brother a similar amount.

Priest Gates testified that he did not see the money, did not get any of it and did not see it divided. Roland Cheers did not testify.

Lafayette O'Donnell, the victim, testified positively that the Cheers boys took his money and that he didn't think appellant had anything to do with it.

Frank Turner testified that on Monday, following the robbery, he went to Memphis with appellant and that he (Turner) loaned appellant money to replace a defective generator. If appellant had any money "he didn't show it."

It will thus be seen that the only evidence against Farrar is that of the accomplice Joe Cheers—unless, of course, considerable weight is given to the fact that appellant gave the Cheers boys and the others a ride in his car and that he was near the scene of the crime.

We have held that the corroboration of an accomplice must be substantial and that placing the defendant near the scene of the crime is not sufficient. *Strum* v. *State*, 168 Ark. 1012, 272 S. W. 359; *Bright* v. *State*, 212 Ark. 852, 208 S. W. 2d 168.

The state in its brief says:

"From O'Donnell's testimony alone, the jury could have concluded that the appellant became aware of the fact that O'Donnell was carrying a large sum of money while O'Donnell was in Farrar's place of business; and, although O'Donnell while at Farrar's place refused a ride home in Farrar's automobile, Farrar then followed O'Donnell and the 'Cheers boys' and insisted on giving them a ride for the purpose of participating in taking the money from O'Donnell. From this testimony, it would appear that Farrar, Gates and the 'Cheers boys' had conspired, during the period that O'Donnell was at Farrar's place, to steal the money, and that Farrar was an accessory to the accomplishment of that conspiracy."

This is clearly conjecture as there is not an iota of

proof to support the argument that the defendants knew or discussed the amount of money the victim had or that any plans were made to relieve him of it. The corroboration is insufficient.

Reversed and remanded.